IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| STEADFAST INVESTMENTS AND PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:23-cv-01091-JDB-jay |

ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is the motion of Plaintiff, Steadfast Investments and Properties, LLC ("Steadfast"), for judgment on the pleadings. (Docket Entry ("D.E.") 24.) Defendant, Amguard Insurance Company ("Amguard"), has filed a cross-motion for judgment on the pleadings and responded to Steadfast's motion. (D.E. 25 & 26.) Plaintiff filed a consolidated reply and response to the cross motion for judgment on the pleadings (D.E. 31), to which Defendant replied (D.E. 35).

Contemporaneously, Steadfast moved to certify a question to the Tennessee Supreme Court. (D.E. 32.) The Court granted that motion on December 28, 2023, and administratively closed this case while the Tennessee Supreme Court considered whether to accept the question. (D.E. 39.) That court rejected the question on April 12, 2024. (D.E. 44-1.) The parties subsequently moved to reopen this case (D.E. 44), which the undersigned granted (D.E. 45.) Finally, the parties sought permission to file their respective briefs to the Tennessee Supreme Court in this case as supplemental briefing (D.E. 48), which the Court granted (D.E. 49.) The parties, thereafter, submitted their briefs. (D.E. 51 & 52.) This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is DENIED and Defendant's cross-motion is GRANTED.

**BACKGROUND**

I.    <u>The Fire</u>

Amguard insured the premises at 1819 Highway 45 Bypass in Jackson, Tennessee, when, on May 21, 2021, a fire affected the commercial building there. (D.E. 24-1 at PageID 201.) Steadfast owned the property but leased it to Zaid Group, Inc., who contracted with Defendant for insurance. (D.E. 26 at PageID 217.) The parties disagree as to whether the fire destroyed or merely damaged the subject property; however, they agree that the Environmental Court of the City of Jackson entered a demolition order for it. (D.E. 24-1 at PageID 201.) As a result, Amguard made an actual cash value payment of $180,610.42 to Steadfast and Zaid Group on August 18, 2022. (D.E. 1 at PageID 4.) Unsatisfied because it viewed the policy as "valued," Plaintiff demanded the policy's limit. (*Id.* at PageID 7.) When Defendant demurred, Steadfast filed this lawsuit. (*Id.*)

II.    <u>The Insurance Policy</u>

The contract of insurance provided for building coverage on the subject property with a limit of $827,742 and a replacement cost valuation. (D.E. 26 at PageID 217.) Additionally, the agreement indicated that the insurer could pick one of four options in the event of loss: "(1) [p]ay the value of lost or damaged property; (2) [p]ay the cost of repairing or replacing the lost or damaged property; (3) [t]ake all or any part of the property at an agreed or appraised value; or (4) [r]epair, rebuild or replace the property with other property of like kind and quality . . . ." (*Id.* at PageID 218.) Further, a provision noted that Amguard would "determine the value of Covered Property . . . [a]t replacement cost without deduction for depreciation . . . ." (*Id.*) Moreover, the policy provided that "the most [insurer] will pay for loss or damage in any one occurrence is the applicable Limits of Insurance[.]" (*Id.* at PageID 219.) Finally, the contract contemplated an appraisal process if the parties "disagree[d] on the amount of loss." (*Id.* at PageID 220.)

**LEGAL STANDARD**

The standard of review for motions for judgment on the pleadings is the same as that for motions to dismiss for failure to state a claim upon which relief can be granted. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Thus, the court accepts all well-pleaded allegations as true, asks if there are material factual issues, and, if not, may grant a movant's request if they are "entitled to judgment as a matter of law." *See JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). However, the court need not regard legal conclusions or unplausible assertions as true. *Id.* at 582 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

**LAW & ANALYSIS**

The parties primarily disagree on two issues: (1) whether this contract, by its terms, was an open or valued policy; and (2) whether Tennessee law permits open policies for fire insurance where the policy has been in effect for more than 90 days before the loss. (D.E. 24 & 25.) Because the insurance policy was open, Amguard's motion will be granted while Steadfast's will be denied.

I.  Insurance Policy's Terms

Plaintiff contends that the parties agreed to a valued policy with $827,724.00 for building coverage based on the plain language of the policy. (D.E. 24-1 at PageID 204, 210.) Defendant responds that the policy's terms demonstrate that it was meant to be an open policy. (D.E. 26 at PageID 224–28.) In support of its position, Amguard points to the replacement cost provision, the word "limit" in relation to the policy limit, and the appraisal provision. (*Id.*) The Court agrees with Defendant's position. The subject agreement creates an open policy of insurance.

In Tennessee, insurance policies are interpreted the same as any other contract. *See Shempert v. Cox*, 513 S.W.3d 469, 473 (Tenn. Ct. App. 2016) (quoting *Garrison v. Bickford*, 377 S.W.3d 659, 663–64 (Tenn. 2012)). A court interprets a contract to effectuate the intent of the parties by enforcing the agreement's plain and ordinary language. *See Certain Underwriters at Lloyd's of London v. Paniagua*, 957 F. Supp. 2d 921, 924 (W.D. Tenn. 2013) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009); *Nat'l Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 137 (Tenn. Ct. App. 2004)). Exclusions of coverage in insurance policies are strictly construed against the insurer, but courts should not read exclusions to frustrate their purpose. *Id.* (citing *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998)). Finally, the Sixth Circuit has cautioned against reading a contract in a way that renders any provision superfluous. *See Filicky v. Am. Energy-Utica, LLC*, 645 F. App'x 393, 398 (6th Cir. 2016) (quoting *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 578 (6th Cir. 2010)).

Here, a plain reading of three provisions supports the conclusion that the parties meant for this contract of insurance to be open. First, the policy limit is exactly that: a limit, not a fixed sum. (D.E. 26 at PageID 217.) *Black's Law Dictionary* defines liability limit as "[t]he *maximum* amount of coverage that an insurance company will provide on a single claim under an insurance policy." *Liability Limit*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). In other words, following a loss, the insurer would pay the replacement cost for the damaged property up to the limit, no more. *See id.* Establishing a limit is not the same as conclusively establishing value.

Second, the replacement cost provision suggests that this policy was not valued. (D.E. 26 at PageID 217.) A policy providing for replacement cost is one that permits an insured to receive payment for the cost to replace the lost property. 12A Jordan R. Plitt et al., *Couch on Ins*. § 176:56

4

(3d ed. 2024). A replacement cost provision may award an insured proceeds exceeding the actual cash value of the property because it includes that sum plus additional costs to replace the structure; as such, replacement cost coverage typically places insureds in a better position than they were prior to the loss. *See* 3 Allan D. Windt, *Ins. Claims & Disps.* § 11:35 (6th ed. 2024). It would be inconsistent with an intention to create a valued policy to include a replacement cost provision because the replacement cost may well differ from the set value. Although Plaintiff contends that this term does not apply to total losses (D.E. 31 at PageID 301–03), that is mentioned nowhere in the agreement (D.E. 26-1). Absent an indication that the insurer meant to provide replacement cost coverage only for partial losses, it is improper to read that additional language into an otherwise unambiguous term. *See Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). Thus, the replacement cost provision indicates that this policy is open rather than valued. (D.E. 26 at PageID 217.) This is the most common sense reading because the cost to replace the property would almost assuredly differ from the precise limits of the policy, and it is the replacement cost—not the limit (unless, of course, the replacement cost exceeded or equaled the limit)—that Amguard is obligated to pay.

Likewise, the appraisal process is inconsistent with a finding that this policy was valued. (D.E. 26-1 at PageID 255.) The contract provides for an appraisal procedure if the parties disagree about the amount of a covered loss. (*Id.*) This term indicates that each party may appoint its own appraiser and the two appraisers will then choose an impartial umpire who will prepare a report providing the amount of the loss. (*Id.*) This process would be entirely superfluous if this insurance policy was valued, and courts applying Tennessee law are cautioned against adopting any interpretation that renders a contractual term superfluous. *See, e.g., Lovett v. Cole*, 584 S.W.3d 840, 861 (Tenn. Ct. App. 2019) (citing *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*,

610 F. App'x 464, 468 (6th Cir. 2015)). Again, while Steadfast suggests that this process was only meant for partial losses (D.E. 31 at PageID 301–04), that is not what the policy states (D.E. 26-1 at PageID 255). Instead, the policy declares that this procedure is available in all instances in which the parties cannot agree on an amount for a covered loss. (*Id.*) Surely if the parties had intended to make this a valued policy, they would have insisted upon a clarification to the appraisal condition excluding total losses from its ambit. They did not. Adding such a provision by judicial decree now would improperly subvert the parties' intent as expressed through the plain language of the contract. *Watson*, 195 S.W.3d at 611.

At base, Plaintiff's reading of the insurance policy requires the insertion of missing terms that all support Steadfast's position, meanwhile Defendant's interpretation accords with the plain language of the contract. The simplest, common sense reading of the agreement is the right one as it is most likely to derive the parties' intent at the time of contracting. *See Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016) (noting that the "cardinal principle" of contractual interpretation is "ascertaining and effectuating the intent of the parties to the contract.") (citation omitted); *Barnes v. Black Diamond Coal Co.*, 47 S.W. 498, 499 (Tenn. 1898) ("Common sense must be applied to each case, rather than any technical rules of construction."). The policy limit, replacement cost, and appraisal terms indicate that the parties planned to determine the replacement cost value of property that suffered a covered loss during the policy's term after the loss occurred—not before. Nothing in the agreement dictates otherwise. (D.E. 26-1.)

The United States District Court for the Eastern District of Tennessee recently reached the same conclusion in two cases akin to this one. First, in *Liu v. Rock Ridge Insurance Company*, that court rejected an insured's assertion that a policy was valued. 662 F. Supp. 3d 793, 800 (E.D. Tenn. 2023). There, a wildfire destroyed the plaintiff's property, which the defendant had insured

for more than 90 days prior to the loss. *Id.* at 794–95. As here, the policy in *Liu* included a replacement cost valuation, a policy limit, and an appraisal provision. *Id.* at 795. Relying on those terms, District Judge Clifton L. Corker determined that the agreement created an open policy of insurance, not a valued policy. *Id.* at 799–800. Similarly, in *Liang v. Rock Ridge Insurance Company*, District Judge Charles E. Atchley, Jr., concluded that a replacement cost valuation, policy limit, and an appraisal provision precluded a finding that an insurance policy was valued. *See* Order, *Liang v. Rock Ridge Ins. Co.*, No. 22-cv-344 (E.D. Tenn. Sep. 8, 2023), ECF No. 35.

Therefore, the subject insurance agreement here is an open policy, not a valued one. That conclusion is supported by the plain language and common sense understanding of the language of the contract, as well as by the recent holdings of this Court's sister district.

II.   Tennessee Law on Open Fire Insurance Policies

Nevertheless, Steadfast maintains that Tennessee law prohibits insurers from carrying open policies in cases of total loss by fire once the policy has been in effect for more than 90 days. (D.E. 31 at PageID 295–97.) Meanwhile, Amguard contends that the law does not affect policies that are open by their plain terms. (D.E. 26 at PageID 222.) The Court agrees with Defendant.

The Tennessee Supreme Court has created guidelines for interpretating the state's statutes:

> When engaging in statutory interpretation, well-defined precepts apply. The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. Furthermore, the common law is not displaced by a legislative enactment, except to the extent required by the statute itself.
>
> We look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment. Courts seek a reasonable interpretation in light of the purposes, objectives, and spirit of the statute based on good sound reasoning. The words in a statute must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.

7

*Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 486 (Tenn. 2021) (internal quotation marks and citations omitted).

Here, Plaintiff understands Tennessee law to make all policies of fire insurance that have been in effect for more than 90 days valued. (D.E. 31 at PageID 295–97.) But Steadfast's argument assumes words in the statute that do not exist. The relevant sections provide:

> **56-7-801. Inspection of property insured against fire – No insurance exceeding fair value of property.**
>
> (a) Within ninety (90) days after making or writing any contract of fire insurance on any building or structure in this state, the company, its designee or agent, shall cause the building or structure to be inspected.
>
> (b) No company, agent or insurance producer shall knowingly issue, negotiate, continue or renew, or cause or permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests in the property within this state of an amount that, with any existing insurance on the property, exceeds the fair value of the property.
>
> **56-7-802. Measure of damages for loss by fire—Insured reimbursed for excess premiums.**
>
> If buildings within the state insured against loss by fire are totally destroyed by fire, the company shall not be liable beyond the actual value of the insured property at the time of the loss or damage; and if it appears that the insured has paid premiums on an amount in excess of the actual value, the insured shall be reimbursed the proportionate excess or premiums paid on the difference between the amount named in the policy and the actual value, with interest at six percent (6%) per annum from the date of issue; and the excess of premiums, and interest on the premiums, shall be allowed the insured from the time any companies carrying the insurance at the time of the loss have continuously carried the insurance on the destroyed buildings, whether under policies existing at the time of the loss or under previous policies in the same companies.
>
> **56-7-803. Measure of damage in case of agent's failure to inspect property.**
>
> If the company, its designee or agent, fails to place a reasonable value on any insured property within the ninety-day period provided in § 56-7-801, and that is agreed to by the insured, and a loss occurs, then the value as shown by the policy or application is conclusively presumed to be reasonable, and settlement shall be made on that basis.

Tenn. Code Ann. §§ 56-7-801–803.

The statute's text belies Plaintiff's argument. Tenn. Code Ann. §§ 56-7-801, 803. By its plain language, the law demands simply that an insurer cannot issue a policy that has a value exceeding the fair value of the insured premises. § 56-7-801. If an insurer does so, it is prohibited from paying that amount to an insured; instead, it must remit a refund for premiums paid on that inflated value. § 56-7-802. Furthermore, if the parties agreed to a valued policy establishing a sum certain in cases of loss but an inspector does not ascertain the true value within 90 days, then the value initially selected is conclusive. § 56-7-803. Nothing in the statute necessitates that all policies be valued. §§ 56-7-801–803. These are rules *governing* the practice of valued policies, not *mandating* those policies. *Id.*; *see, e.g.*, *Sayer Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 150 F. Supp. 2d 907, 915 n.10 (S.D. W.Va. 2001) ("This result is further buttressed by the failure of the West Virginia statute to require all fire insurance policies on real estate to state an agreed value, that is, to be valued policies. Other states' valued policy laws do so require."). *Liu* and *Liang* support this conclusion because both acknowledged that the text of the contract—not the valued policy law—governed the dispute. *See generally Liu*, 662 F. Supp. 3d 793 (focusing on the text of the policy to determine whether it was valued); Order, *Liang*, 22-cv-344 (E.D. Tenn. Sep. 8, 2023), ECF No. 35 (same).

Nevertheless, Steadfast contends that these cases do not actually support a finding that the policy in this case was open. (D.E. 51-1 at PageID 453–55.) Plaintiff specifically highlights material differences between the contracts at issue in those cases and the instant one. (*Id.*) The foundational problem with Steadfast's argument, though, is that the insurance policy here is open by its plain language. Thus, absent a finding that this contract is valued *as a matter of law*, Plaintiff's argument is unavailing. Any dissimilarities between the individual contracts at issue in

9

*Liu* and *Liang* and the instant case do little to help Steadfast because those differences speak only to whether the Court should view this contract as open or valued under its terms, not as a matter of law, and, as noted above, the policy here is open.

Admittedly, in its order certifying this question to the Tennessee Supreme Court, the Court indicated that those cases from the Eastern District did not expressly consider the precise legal arguments presented. (D.E. 39 at PageID 386.) It was in part because of that concern that the undersigned granted the motion to certify. (*Id.*) However, Tennessee's high court left those holdings undisturbed when it denied certification. (D.E. 44-1.) Therefore, the only persuasive authority available is *Liu* and *Liang*. Absent conflicting authority, the prudent path is to remain consistent with this Court's sister district. *See Aspex Eyewear, Inc. v. Zenni Optical, LLC*, No. 09-61468-CIV, 2012 WL 9500667, at *8 (S.D. Fla. Mar. 21, 2012) (acknowledging "the policy of giving comity to the decisions of sister district courts"), *report and recommendation adopted by* No. 09-61468-CIV, 2012 WL 9500820 (S.D. Fla. Mar. 30, 2012). Furthermore, because the text of the statute does not support Plaintiff's argument, the holdings of the Eastern District are consistent with this Court's own reading of the law.

Accordingly, based on the arguments of the parties and the available case law, Tennessee's valued policy statute does not appear to require that all fire insurance policies in effect for more than 90 days be valued.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (D.E. 24) is DENIED while Defendant's cross-motion (D.E. 25) is GRANTED.

IT IS SO ORDERED this 1st day of July 2024.

                                                          s/ J. DANIEL BREEN
                                                          UNITED STATES DISTRICT JUDGE