UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

STEADFAST INVESTMENTS AND
PROPERTIES, LLC,

    Plaintiff,

v.                                                              No. 1:23-cv-01091-JDB-jay

AMGUARD INSURANCE COMPANY,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND REVISION OF
INTERLOCUTORY ORDER

---

Before the Court is the motion of Defendant, Amguard Insurance Company ("Amguard"), for summary judgment, (Docket Entry ("D.E.") 78), to which Plaintiff, Steadfast Investments and Properties, LLC ("Steadfast"), responded, (D.E. 95), and Defendant replied. (D.E. 102.) Also before the Court is the motion of Plaintiff for reconsideration and revision of an interlocutory order, (D.E. 96), to which Defendant responded, (D.E. 106), and Plaintiff replied. (D.E. 110.) For the following reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for reconsideration and revision is DENIED.

*DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

    I.        UNDISPUTED FACTS

           A.        Factual History

The following material facts are undisputed, unless otherwise noted. Steadfast owned the commercial real property and building located at 1819 Highway 45 Bypass, Jackson, Tennessee.

(D.E. 1 at PageID 2; D.E. 102-1 at PageID 1642.)  The building on the property served as a convenience store and gas station.  (D.E. 1 at PageID 2.)  Steadfast leased the property to Zaid Group, Inc. ("Zaid").  (*Id.* at PageID 2-3; D.E. 62 at PageID 556.)

Zaid contracted with Amguard to obtain insurance coverage on the property and Amguard issued coverage under Policy No. ZABP185158.  (D.E. 102-1 at PageID 1642-43; D.E. 95-1 at PageID 971.)  Zaid is the "Named Insured" in the contract, (D.E. 95-1 at PageID 972), while Steadfast is only mentioned twice in the policy.  (*Id.* at PageID 973-74.)  First, Steadfast is included as an additional insured on an endorsement titled "Additional Insured—Designated Person or Organization."  (*Id.* at PageID 974 (quoting D.E. 78-1 at PageID 767).)  Second, Plaintiff is listed as a "Loss Payee" on an endorsement titled "Loss Payable Clauses."  (*Id.* at PageID 976 (quoting D.E. 78-1 at PageID 775).)

On May 21, 2021, a fire damaged the property and the loss was reported to Amguard.  (D.E. 1 at PageID 4; D.E. 95-1 at PageID 978.)  The Environmental Court of the City of Jackson, Tennessee mandated the demolition of the building on the property as a result of the incident.  (D.E. 1 at PageID 6.)  As a consequence of the fire, Amguard issued an actual cash value payment of $180,610.42 jointly to Zaid and Steadfast.  (D.E. 95-1 at PageID 979.)  Plaintiff argues that the insurance policy was "valued" under Tennessee law, so it insists that Amguard owes the full value placed on the building, $827,742.00.  (D.E. 1 at PageID 5-7.)  The carrier refused to pay the larger amount, which as a result, this litigation ensued.  (*Id.* at PageID 4-7.)

B.     Procedural History

On May 18, 2023, Steadfast initiated this action against Amguard, (D.E. 1.), which, on July 19, responded to the complaint.  (D.E. 16.)  Steadfast later moved for a judgment on the pleadings, (D.E. 24), to which Amguard filed a similar cross motion.  (D.E. 25.)  While these cross motions

were pending, the Court certified a question concerning the claims to the Tennessee Supreme Court and administratively closed the case. (D.E. 39.) Following the Supreme Court's denial of certification, (*see* D.E. 44-1), the case was reopened on April 18, 2024. (D.E. 45). On July 1, 2024, the Court granted Amguard's pending motion but denied the one by Steadfast. (D.E. 62.) In its order, the Court held that the insurance policy was an "open," not a "valued," policy under Tennessee law. (*Id.* at PageID 557.)

On March 17, 2025, Amguard filed the instant motion for summary judgment, (D.E. 78), to which Steadfast responded, (D.E. 95), and Defendant replied. (D.E. 102.) Additionally, Steadfast moved for reconsideration and revision of the Court's order granting Amguard's motion for judgment on the pleadings, (D.E. 96), to which Defendant responded, (D.E. 106), and Plaintiff replied. (D.E. 110.)

II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)). Stated differently, "[a] factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way." *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To show a genuine dispute or lack thereof, "both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

3

produce admissible evidence to support the fact." *Richards v. State Farm Fire & Cas. Co.*, 585 F. Supp. 3d 1083, 1087 (W.D. Tenn. 2022) (quoting *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012)). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving part[y] should prevail as a matter of law." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021) (quoting *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014)).

When determining whether summary judgment is appropriate, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). However, "credibility judgments and weighing of the evidence are prohibited." *Thacker*, 47 F.4th at 459 (quoting *Kirilenko-Ison*, 974 F.3d at 660).

III.    ARGUMENTS OF THE PARTIES AND ANALYSIS

Amguard bases its motion on four grounds: (1) after the Court granted its motion for judgment on the pleadings, Steadfast's sole remaining claim was for breach of contract related to Amguard's valuation of loss; (2) Steadfast lacked standing to assert a breach of contract claim because it was not a party to the policy; (3) Steadfast lacked standing to bring a breach of contract claim as to the adjustment and amount of loss because it was not an intended third-party beneficiary; and finally, (4) even if Steadfast had standing, it had presented no evidence that Amguard's valuation of the loss breached any terms of the policy. (D.E. 79 at PageID 845-46.)

A.    Effect of Granting Amguard's Motion for Judgment on the Pleadings

4

Amguard is correct that the Court determined that the policy was an "open" one and narrowed the claims available to Plaintiff. (*See* D.E. 62 at PageID 557-64.) In its complaint, Steadfast pled two causes of action: for breach of contract and for a declaratory judgment on the valued policy issue. (D.E. 1 at PageID 8-9.) By ruling that the policy was "open," the Court rendered Plaintiff's request for the declaratory judgment moot. Thus, only the claim for breach of contract remains.

### B. Steadfast's Standing for Breach of Contract Claim

In Tennessee, insurance policies are interpreted the same as any other contract. *See Shempert v. Cox*, 513 S.W.3d 469, 473 (Tenn. Ct. App. 2016) (quoting *Garrison v. Bickford*, 377 S.W.3d 659, 663-64 (Tenn. 2012)). A court interprets a contract to effectuate the intent of the parties by enforcing the agreement's plain and ordinary language. *See Certain Underwriters at Lloyd's of London v. Paniagua*, 957 F. Supp. 2d 921, 924 (W.D. Tenn. 2013) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)). "In construing contracts, [courts] are to give effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous." *Lovett v. Cole*, 584 S.W.3d 840, 861 (Tenn. Ct. App. 2019) (citing *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 468 (6th Cir. 2015)).

In Tennessee, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Additionally, "[p]rivity of contract has indeed been described as an essential element in breach of contract actions." *Mitchell v. Rushmore Loan Mgmt. Servs., LLC*,

5

No. W2022-00621-COA-R3-CV, 2023 WL 5528041, at *4 (Tenn. Ct. App. Aug. 28, 2023) (quoting *Bynum v. Sampson*, 605 S.W.3d 173, 182 (Tenn. Ct. App. 2020)); *see also id.* (defining privity of contract as "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so" (quoting Black's Law Dictionary (11th ed. 2019))). Courts have traditionally required privity of contract in breach of contract actions because they "presume that contracts, including insurance policies, are for the benefit of the parties to the contract and not for the benefit of third parties." *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 907 (Tenn. 2019) (citing *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016)).

This long-established rule has given way to an exception: when the parties intend a third party to receive the benefits of the contract. *Travelers Property Cas. Co. of Am. v. Unitrac R.R. Materials, Inc.*, No. E2006-02679-COA-R3-CV, 2007 WL 2437960, at *3 (Tenn. Ct. App. Aug. 29, 2007) (quoting *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, the modern intended-beneficiary rule permits third parties to recover on a breach of contract theory. *See Owner-Operator*, 59 S.W.3d at 68 (allowing recovery for third parties who are meant to receive the benefit of the contract, but not for those who merely receive an incidental benefit).

Amguard argues that Steadfast is neither a party to the insurance policy nor an intended third-party beneficiary, so Plaintiff lacks standing for its breach of contract claim. (D.E. 79 at PageID 855-56.) The Court will first assess whether the insurance policy placed Steadfast in privity of contract with the contracting parties—Amguard and Zaid. If the Court finds that Steadfast is not in privity and thus not a party to the policy, it will then determine whether it is an intended beneficiary.

6

i. Whether Steadfast is a Party to the Policy

Amguard roots its position—that Steadfast is not a party to the insurance policy—on two grounds: Plaintiff is not a named insured in the policy's declarations and is only mentioned twice in the insurance contract. (*Id.* at 847, 856 (citing D.E. 78-1 at PageID 742, 748).) Plaintiff appears in the Additional Insured Endorsement as an additional insured and in the Loss Payable Clause Endorsement as a loss payee.

a. Additional Insured Endorsement

The Additional Insured Endorsement clarifies that Steadfast is an additional insured, "but only with respect to *liability* for 'bodily injury', 'property damage' or 'personal and advertising injury' caused . . . by [Zaid's][1] acts or omissions . . . or in connection with [Zaid's] premises owned by or rented to [Zaid]." (D.E. 78-1 at PageID 767 (emphasis added).) Plaintiff and Defendant agree that liability insurance is not at issue, (D.E. 95-1 at PageID 975), so this provision does not provide Steadfast with the rights of an additional insured or a party.

b. Loss Payable Clauses Endorsement

This endorsement begins with the following disclaimer: "Nothing in this endorsement increases the applicable Limit of Insurance. [Amguard][2] will not pay any Loss Payee more than their financial interest in the Covered Property, and [Amguard] will not pay more than the applicable Limit of Insurance on the Covered Property." (D.E. 78-1 at PageID 775.) In the schedule on this endorsement, "A" is selected in the box next to the language that states "Applicable Clause (Indicate Paragraph A, B or C)." Paragraph A provides:

---

[1] The policy defines the words "you" and "your" as referring to "the Named Insured shown in the Declarations," which is Zaid. (D.E. 78-2 at PageID 796.) The Court has substituted Zaid and Zaid's for "you" and "your," respectively, for clarity purposes.

[2] The policy defines the words "we," "us," and "our" as referring to "the Company providing this insurance," which is Amguard. (D.E. 78-2 at PageID 796.) The Court has likewise substituted Amguard and Amguard's for "we," "us," and "our," respectively, for clarity purposes.

> A. Loss Payable Clause
>
> For Covered Property in which both [Zaid] and a Loss Payee . . . have an insurable interest, [Amguard] will:
> 1. Adjust losses with [Zaid]; and
> 2. Pay any claim for loss or damage jointly to [Zaid] and the Loss Payee, as interests may appear.

(*Id.*)  Although the schedule box only indicates the options of Paragraphs A, B, or C, and only Paragraph A is selected, the endorsement also includes Paragraph D, which reads:

> D. Building Owner Loss Payable Clause
>
> 1. The Loss Payee . . . is the owner of the described building, in which [Zaid is] a tenant.
> 2. [Amguard] will adjust losses to the described building with the Loss Payee.  Any loss payment made to the Loss Payee will satisfy [Zaid's] claims against [Amguard] for the owner's property.
> 3. [Amguard] will adjust losses to tenant's improvements and betterments with [Zaid], unless the lease provides otherwise.

(*Id.* at PageID 776.)

Amguard submits that because Paragraph A is solely selected in the schedule, only that provision applies to the policy.  (D.E. 79 at PageID 854.)  The plain reading of this paragraph, according to Defendant, reflects that Amguard will adjust a loss with Zaid, and any claim for loss will be paid jointly to Zaid and Steadfast.  (*Id.*)

As noted above, courts interpret a contract by enforcing the agreement's plain and ordinary language; contracts are not to be read in a way that renders any provision superfluous.  *See supra* Section III.B.  Because the schedule indicates Paragraph A as the "Applicable Clause," Paragraph A is the only controlling one in the endorsement by its plain and ordinary language.  Paragraph D's unexplained presence cannot be read to apply when the contracting parties did not designate it as controlling.  Thus, the Court will not consider Paragraph D because the schedule exclusively indicates "A," so the endorsement lacks any intention that the contracting parties agreed to

8

Paragraph D.  The Court will not render the contracting parties' election of Paragraph A superfluous.  *See Lovett*, 584 S.W.3d at 861 (citing *Crossville Med.*, 610 F. App'x at 468).

Plaintiff poses an alternative argument that Paragraph D renders the policy ambiguous because Steadfast, as the building owner, is named as a loss payee under Paragraph A and should have been named under Paragraph D, which applies to building owners.  (D.E. 95 at PageID 962.)  As a result, Steadfast insists that the Court should apply Paragraph D, which would create an independent contract between Plaintiff and Amguard and thus establish Plaintiff has standing for its breach of contract claim.  (*Id.* at PageID 962-63.)  Defendant counters that Plaintiff's ambiguity argument rests upon the following erroneous assumptions: Paragraph D should have been selected simply because Plaintiff owned the building, Paragraph A cannot be selected if the loss payee was the building owner, and the contracting parties requested Paragraph D.  (D.E. 102 at PageID 1637.)

"Ambiguity in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one."  *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (quoting *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 240 (Tenn. Ct. App. 2005)).  However, "[w]hen the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written."  *Crye-Leike v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) (quoting *Union Realty Co. v. Family Dollar Stores of Tenn., Inc.*, 25 S.W.3d 586, 591 (Tenn. Ct. App. 2007)).  As found above, the plain language of the endorsement includes the schedule's indication of "A," meaning that Paragraph A is the applicable clause in the endorsement.  The unexplained presence of Paragraph D does not render the schedule unambiguous.  The indication of "A" can be fairly understood in only one way: Zaid and Amguard agreed to Paragraph A, not Paragraph D.

For these reasons, only Paragraph A of the Loss Payable Clauses Endorsement applies. However, Paragraph A alone does not provide Steadfast with privity of contract or make Steadfast a party to the policy because it is not named in the declarations and only appears twice in the entire policy.

          ii.        Whether Steadfast Is an Intended Third-Party Beneficiary

To ascertain whether Paragraph A allows Steadfast to recover, the Court turns to whether Plaintiff was an intended third-party beneficiary. As discussed above, an intended beneficiary is a third party to the contract who the contracting parties meant to receive the benefit of the contract, and due to that benefit, that third party is able to sue to enforce the contract. *See supra* Section III.B. A third party seeking to recover "bears the burden of proving, from the terms of the contract or the circumstances surrounding its execution, that, *at the time of contracting*, [it] was an intended third-party beneficiary of the contract." *Wallis*, 509 S.W.3d at 899 (emphasis in original) (citations omitted). "If the contractual benefits flowing to the third party are merely incidental, rather than intended, the third party may not recover under the contract." *Id.* (citing *Owner-Operator*, 59 S.W.3d at 68).

The Tennessee Supreme Court has established a three-part test to determine whether a third party is an intended beneficiary and thus entitled to enforce the contract's terms:

> (1) The parties to the contract have not otherwise agreed;
> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>     (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
>     (b) the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator*, 59 S.W.3d at 70.  The "primary focus" of this test is "the intent of the contracting parties."  *Id.*  Also, when applying the test, "courts examine the specific promise which the third part[y] contend[s] was intended to benefit [it.]"  *Elvis Presley Enters., Inc. v. City of Memphis*, No. W2019-00299-COA-R3-CV, 2022 WL 854860, at *12 (Tenn. Ct. App. Mar. 23, 2022) (quoting *Doramus v. Rogers Grp., Inc.*, No. M1998-00918-COA-R3-CV, 2001 WL 196974, at *16 (Tenn. Ct. App. Feb. 28, 2001)).  The Court will examine whether Zaid and Amguard intended Paragraph A to benefit Steadfast.[3]

The first part of the test is satisfied.  The policy contains no agreement between Zaid and Amguard to exclude benefits to third parties.  *See Charter Oak Fire Ins. Co. v. Lexington Ins. Co.*, No. M2002-01752-COA-R3-CV, 2004 WL 431488, at *13 (Tenn. Ct. App. Mar. 2, 2004) ("There is no explicit statement in the contract that the parties intended to reserve to themselves the benefit of their agreement.")  Defendant does not contest this factor.  (*See* D.E. 79 at PageID 857-60.)

The third prong is also satisfied, through subsection (b).  Paragraph A of the Loss Payable Clauses Endorsement provides for joint payment of a claim to both the insured and the loss payee, (D.E. 78-1 at PageID 775), which demonstrates that the contracting parties intended to confer a benefit on the loss payee and third party, Steadfast.  *See Owner-Operator*, 59 S.W.3d at 71 ("Under subsection (b) [of part 3], the analysis more directly centers upon whether the promise actually intends to confer a benefit upon the third party.")  That joint payment was in fact issued to Zaid and Steadfast after the fire, so the benefit was intended and actually conferred.  (D.E. 95 at PageID 961.)  Amguard does not contest the third prong.  (*See* D.E. 79 at PageID 857-60.)

---

[3] The only other instance when Steadfast is mentioned in the policy—in the Additional Insured Endorsement—does not confer a benefit, neither intentional nor incidental, upon Plaintiff because the endorsement addresses liability insurance, and Steadfast and Amguard concede that liability is not at issue.  *See supra* Section III.B.i.a.

11

Plaintiff and Defendant dispute the application of the second element. (*Id.* at PageID 860; D.E. 95 at PageID 961.) "In applying [the second] part, courts should look to what the parties intended to accomplish by their agreement, and a third party should not be deemed an intended beneficiary if so doing would undermine the parties' purposes." *Owner-Operator*, 59 S.W.3d at 70-71. Based on these criteria, Plaintiff prevails in its argument that the second element is satisfied. By the plain language of Paragraph A, Zaid and Amguard intended Steadfast to receive a joint payment for any claim, which recognizes a right to performance if a loss were to occur. Amguard agrees that "the purpose of '[Paragraph] A' . . . is to confer some protection or benefits of the Policy to an entity even through it is not the policyholder." (D.E. 102-1 at PageID 1644 (emphasis in original).) Therefore, the parties' purposes are not undermined by deeming Plaintiff an intended beneficiary.

Plaintiff has met its burden by proving that it is an intended, not merely incidental, third-party beneficiary of Paragraph A, *Wallis*, 509 S.W.3d at 899, and in Amguard's reply, Defendant conceded this point. (D.E. 102 at PageID 1635 ("It is undisputed that Steadfast is an intended third-party beneficiary of [Paragraph] A.").) Therefore, Plaintiff has standing as an intended beneficiary to enforce its rights under Paragraph A and bring its breach of contract action.

        C.      Steadfast's Breach of Contract Claim

Although Steadfast has proven its standing to sue under Paragraph A, Plaintiff cannot overcome Amguard's summary judgment argument. The inquiry now turns to whether Steadfast is able to enforce the rights available to it. Under the policy, Plaintiff is an intended beneficiary as to Paragraph A *only*. *See* Steven W. Feldman, 21 Tenn. Prac. Contract Law and Practice § 3:26 ("Even intended third-party beneficiaries lack standing to enforce every contract term. This status is not an all or nothing at all proposition. Contracts frequently have dozens or even hundreds of

promises, and the parties might intend that only a handful inure to the benefit of a third party."). Because Zaid and Amguard intended Steadfast to be a third-party beneficiary solely under Paragraph A, Steadfast cannot rely on other portions of the policy to which it was not an intended beneficiary. *See Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004) ("[A] third-party's rights 'depend upon and are measured by the terms of the contract.'" (quoting *U.S. Fid. & Guar. Co. v. Elam*, 278 S.W.2d 693, 702 (Tenn. 1955))); *Elvis Presley Enters.*, 2022 WL 854860, at *12 ("[C]ourts examine the specific promise which the third part[y] contend[s] was intended to benefit [it.]" (quoting *Doramus*, 2001 WL 196974, at *16)). Therefore, any right that Steadfast seeks to enforce through its breach of contract action must be found in Paragraph A.

As found above, Plaintiff's only claim is its one for breach of contract. *See supra* Section III.A. The Court examines the plain language of Paragraph A in determining whether Amguard has breached any contract with Steadfast. Paragraph A has two provisions: first, that Amguard will "[a]djust losses with [Zaid]," and second, that Amguard will "[p]ay any claim for loss or damage jointly to [Zaid] and the Loss Payee, as interests may appear." (D.E. 78-1 at PageID 775.)

The first provision affords no rights to Plaintiff; it merely expresses that Amguard will adjust losses with Zaid. Steadfast disputes Amguard's valuation of the loss and maintains that Amguard breached the policy by its failure to fully indemnify Plaintiff. (D.E. 95 at PageID 966-67.) Under the first part of Paragraph A, Zaid, not Steadfast, will be the one who adjusts any losses with Defendant. By Plaintiff's own admission, valuation of the loss is the lone "remaining dispute" in this case. (*Id.* at PageID 959.) Because Paragraph A assigns adjustment of the loss between Defendant and Zaid and provides Plaintiff no option to dispute valuation,[4] Plaintiff has no right to enforce the first part of Paragraph A.

---

[4] Outside the Loss Payable Clauses Endorsement, the policy contains an appraisal provision, which states: "If [Amguard] and [Zaid] disagree on the amount of loss, either may make written demand for an appraisal of the

13

The second provision of Paragraph A affords the right of joint payment for a claim of loss or damage to Zaid and Steadfast, and this right was realized when Amguard issued a joint payment of $180,610.42 to Zaid and Plaintiff following the loss. (D.E. 95-1 at PageID 979.) This part of Paragraph A also does not provide a route for Steadfast to dispute the valuation or the payment amount. It simply grants Plaintiff the right of joint payment, and Defendant did not breach this provision. Thus, Steadfast has presented no evidence that Amguard has breached either provision of Paragraph A. The plain language of the paragraph does not entitle Plaintiff to adjust or dispute valuation.

There is no available option in Paragraph A for Plaintiff to recover on a breach of contract claim. As such, a reasonable jury could not find for Plaintiff because no genuine disputes of material fact are present. *Thacker*, 47 F.4th at 458 (quoting *Kirilenko-Ison*, 974 F.3d at 660). For these reasons, Defendant's motion for summary judgment (D.E. 78) is GRANTED.

*PLAINTIFF'S MOTION FOR RECONSIDERATION AND REVISION OF INTERLOCUTORY ORDER*

On July 1, 2024, the Court issued an order denying Plaintiff's motion for judgment on the pleadings and granting Defendant's cross-motion. (D.E. 62.) In that order, the Court found the terms of the insurance policy demonstrated that it was an "open" policy under Tennessee law. (*Id.* at PageID 557.) Specifically, that "[t]he policy limit, replacement cost, and appraisal terms indicate that the parties planned to determine the replacement cost value of property that suffered a covered loss during the policy's term after the loss occurred—not before. Nothing in the

---

loss." (D.E. 78-2 at PageID 816.) The provision then describes the full process for disagreement on appraisal, including selecting appraisers and an umpire. (*Id.*) Even if Plaintiff was an intended beneficiary of this provision, Steadfast would still be unable to recover under it because it only affords rights to Amguard and Zaid. The policy does not provide a basis for Steadfast to dispute appraisal or valuation.

14

agreement dictates otherwise." (*Id.* at PageID 560.) The Court relied on the plain language of the policy for its determination. (*Id.* at PageID 563 ("The foundational problem with Steadfast's argument, though, is that the insurance policy here is open by its plain language.").) Steadfast moved for reconsideration on May 30, 2025. (D.E. 96.)

Motions for reconsideration brought in this District must comply both with Federal Rule of Civil Procedure 54(b) and Local Rule 7.3(b). Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The right of district courts to reconsider interlocutory orders is well-established in the Sixth Circuit. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991))). However, the grounds for reconsideration are limited. "[C]ourts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Under Local Rule 7.3(b), the moving party must show:

> (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

15

Absent one of these grounds, "motions to reconsider interlocutory orders are not otherwise permitted." L.R. 7.3(a).

Such motions "are used sparingly and in rare circumstances." *In re Se. Milk Antitrust Litig.*, Master File No. 2:08-MD-1000, 2011 WL 3793777, at *1 (E.D. Tenn. Aug. 25, 2011). A district court may review its rulings before a case is terminated; however, "it is not required to do so and should not do so in the vast majority of instances, especially where such motions merely restyle or rehash the initial issues." *Id.* (internal quotation marks and citations omitted). Moreover, "[n]o motion for revision may repeat any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised." L.R. 7.3(c).

In its motion for reconsideration, Steadfast avers that new evidence produced during discovery warrants reconsideration, specifically that "the Underwriting File and Amguard's testimony show how Amguard's underwriting process valued the Property *prior* to insuring it, which is inconsistent with Amguard's position that the policy at issue is 'open.'" (D.E. 97 at PageID 1132 (emphasis in original).) Amguard responds that the Court should not consider this new evidence for three reasons: (1) evidence outside the pleadings cannot be considered when ruling on a motion for judgment on the pleadings, (2) extrinsic evidence cannot be used to vary the unambiguous terms of the policy, and (3) the new evidence does not reconcile the conflict between the other policy provisions and a finding that the policy is valued. (D.E. 106.)

Under Tennessee law, "questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." *Burka v. Vanderbilt Univ. Med. Ctr.*, 550 F. Supp. 3d 530, 540 (M.D. Tenn. 2021) (quoting *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012)). "And under Tennessee law, '[i]nsurance contracts are subject to the same rules of construction as contracts generally[.]'" *Id.* (alterations in original) (quoting *Clark v. Sputniks,*

16

*LLC*, 368 S.W.3d 431, 441 (Tenn. 2012)).  The Tennessee Supreme Court has explained that "the strong strain of textualism in Tennessee caselaw demonstrates resolve to keep the written words as the lodestar of contract interpretation." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (collecting cases).  "Tennessee courts 'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute.'" *Id.* (quoting Feldman, 21 Tenn. Prac. § 8:14).

Steadfast asks the Court to rely on extrinsic evidence—the underwriting file and deposition testimony by Amguard—to find ambiguity in the insurance policy.  It submits that this "new evidence . . . demonstrates that the Policy may fairly be understood in more than one way." (D.E. 97 at PageID 1136 n.3.)  Steadfast puts the cart before the horse: "the Court cannot look to extrinsic evidence to determine whether an ambiguity exists in the first place." *CapWealth Advisors, LLC v. Twin City Fire Ins. Co.*, 665 F. Supp. 3d 862, 873 n.13 (M.D. Tenn. 2023), *aff'd*, No. 23-5359, 2024 WL 1134647 (6th Cir. Mar. 15, 2024).  "[T]he only exception to this rule is that, generally, a court may consider extrinsic evidence when determining whether a *latent* ambiguity exists." *Id.* (emphasis in original) (citing *Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 607 F. App'x 484, 494 (6th Cir. 2015)).  Plaintiff does not suggest a latent ambiguity and, thus, the Court declines to consider the extrinsic evidence to find ambiguity.

As the Court previously held, the plain language of the policy demonstrates that it is an "open" not "valued" policy. Plaintiff's motion (D.E. 62) is DENIED.

*CONCLUSION*

For the reasons stated above, Defendant's motion for summary judgment (D.E. 78) is GRANTED, and Plaintiff's motion for reconsideration and revision of interlocutory order (D.E. 96) is DENIED.  The Clerk is DIRECTED to enter judgment for Defendant.

IT IS SO ORDERED this 8th day of January 2026.

<pre>
                                s/ J. DANIEL BREEN
                                UNITED STATES DISTRICT JUDGE
</pre>